**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC INTERNATIONAL CORPORATION, | ) | |
| et al. | ) | Case No. 13-12050 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |
| IPC INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 14-50333 (MFW) |
| | ) | |
| MILWAUKEE GOLF SHOPPING | ) | |
| CENTER LLC AND MILWAUKEE GOLF | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is a motion for transfer of venue, or for partial dismissal, of an adversary proceeding brought by the debtor to recover unpaid accounts receivable on theories of turnover, breach of contract, and unjust enrichment. Because the Court finds that the interests of justice and convenience of the parties favor transfer, it will grant the motion to transfer venue. Accordingly, the Court does not reach the issue of partial dismissal.

_____

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

I.    <u>BACKGROUND</u>

IPC International Corporation (the "Debtor") filed a
voluntary petition for relief under chapter 11 of the Bankruptcy
Code on August 9, 2013 (the "Petition Date").  (D.I. 1.)  The
Debtor is a provider of security services, typically at malls.
(Adv. D.I. 1 at ¶ 12.)

Prior to the Petition Date, the Debtor entered into a
Continuing Services Agreement (the "CSA") with Milwaukee Golf
Shopping Center LLC and Milwaukee Golf Management Corporation
(the "Defendants"), under which the Debtor provided security
services to the Defendants at the Golf Mill Shopping Center in
Illinois.  (<u>Id.</u> at ¶ 14; Exhibit A.)

On April 25, 2014, the Debtor filed a Complaint against the
Defendants seeking to recover certain accounts receivable from
July to November of 2013, totaling $160,091.63.  (<u>Id.</u> at ¶ 16;
Exhibit B.)  In its complaint, the Debtor asserts three causes of
action: (1) turnover of debt under section 542(b) of the
Bankruptcy Code, (2) breach of contract, and (3) unjust
enrichment.  (<u>Id.</u> at ¶¶ 35, 41, 45.)

On June 6, 2014, the Defendants filed a motion to transfer
venue or for partial dismissal.  (Adv. D.I. 6.)  The Defendants
ask that the suit be transferred to the United States District
Court for the Northern District of Illinois.  (<u>Id.</u>)
Alternatively, they request that Count III, unjust enrichment, be

dismissed as to both parties, and/or that all Counts be dismissed as to Defendant Milwaukee Golf Management Corporation.  (Id.)

The Debtor opposes the motion.  (Adv. D.I. 9.)  A notice of completion of briefing was filed on July 16, 2014, and the matter is now ripe for decision.  (Adv. D.I. 11.)

II.  JURISDICTION

The Court has jurisdiction over this motion to transfer venue or for partial dismissal.  Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant, LLC), Adv. No. 50526, 2012 WL 5614588, at *1 (Bankr. D. Del. 2012) ("[T]he Court has the power to enter an order on a motion to dismiss even if the [underlying] matter is not core."); DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.), 435 B.R. 264, 268 (Bankr. D. Del. 2010)("[t]he Court has jurisdiction over this Motion to transfer venue, which is a core proceeding.").  See also In re Trinsum Grp., Inc., 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After Stern v. Marshall, the ability of bankruptcy judges to enter interlocutory orders in non-core proceedings, or in core proceedings as to which the bankruptcy court may not enter final orders . . . has been reaffirmed").

III. <u>DISCUSSION</u>

    A.   <u>Core v. Non-Core Proceedings</u>

    Whether the Debtor's claims are core or non-core is disputed and relevant to the transfer of venue analysis.

    The Defendants argue that all of the Debtor's claims are non-core.  The Debtor asserts that its turnover claim is core.

    The Court determines whether a proceeding is core by consulting two sources.  <u>Halper v. Halper</u>, 164 F.3d 830, 836 (3d Cir. 1999).  First is section 157(b) of title 28, which "provides an illustrative list of proceedings that may be considered 'core.'"  <u>Id.</u>  Second is the Third Circuit's test: "a proceeding is core (1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."  <u>Id.</u> (citing <u>In re Guild & Gallery Plus, Inc.</u>, 72 F.3d 1171, 1178 (3d Cir. 1996)).

    Each cause of action or claim must be analyzed separately. <u>See Halper</u>, 164 F.3d at 839.  A single cause of action may include both core and non-core claims, and "[t]he mere fact that a non-core claim is filed with a core claim will not mean that the second claim becomes 'core.'"  <u>In re Exide Techs.</u>, 544 F.3d 196, 206 (3d Cir. 2008).

    1.   <u>Turnover of property</u>

    The first count in the Debtor's complaint is for turnover of property under section 542(b) of the Bankruptcy Code.  A turnover

claim under section 542(b) is core.  28 U.S.C. § 157(b)(2)(e)

(core proceedings include "orders to turn over property of the

estate").  However, the Court must determine whether the Debtor

has properly invoked section 542(b), which provides:

> Except as provided in subsection (c) or (d) of this
> section, an entity that owes a debt that is property of
> the estate and that is matured, payable on demand, or
> payable on order, shall pay such debt to, or on the
> order of, the trustee, except to the extent that such
> debt may be offset under section 553 of this title
> against a claim against the debtor.

11 U.S.C. § 542(b).

The Defendants argue that the Debtor's turnover action does

not meet the requirements of section 542(b) and is really a state

law claim to collect a receivable.  The Defendants claim that the

debt is in bona fide dispute because the parties disagree as

whether Defendant Management is an obligor under the CSA.  The

Defendants also argue that the claim is unmatured, because the

Debtor seeks an unliquidated amount of "prevailing party"

attorneys' fees under Section XII of the CSA.  The Defendants

assert their intention to seek a similar award.

The Debtor claims that neither issue raised by the

Defendants affects the character of the underlying debt, which it

maintains is mature and undisputed.  The Debtor asserts that the

Defendants have never contested the amount due and were willing

to guarantee 100% payment in writing prior to commencement of

this adversary proceeding.  According to the Debtor, the action

therefore fits squarely within the parameters of section 542(b).

         a.   Bona Fide Dispute

     A debtor may not use section 542(b) to recover a debt if the debt is in bona fide dispute.  See, e.g., Stanziale v. Pepper Hamilton, LLP (In re Student Fin. Corp.), 335 B.R. 539, 554 (D. Del. 2005); Hechinger Investment Co. of Delaware, Inc. v. Allfirst Bank (In re Hechinger Investment Co. of Delaware, Inc.), 282 B.R. 149, 162 (Bankr. D. Del. 2002).

     The Third Circuit has held that a bona fide dispute exists "[i]f there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts."  B.D.W. Assoc.s, Inc. v. Busy Beaver Bldg. Centers, Inc., 865 F.2d 65, 66 (3d Cir. 1989). "Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt."  In re Busick, 831 F.2d 745, 750 (7th Cir. 1987).

     In this case, the parties disagree as to whether or not Defendant Management is liable under the CSA.  After review of the CSA, the Court concludes that it is ambiguous as to Management's liability.

     First, the CSA lists the Defendants on consecutive lines across from the words "Owner and" and "Managing Agent", which are on corresponding consecutive lines, as follows:

| OWNER AND | MILWAUKEE GOLF SHOPPING CENTER LLC |
| MANAGING AGENT | MILWAUKEE GOLF MANAGEMENT CORPORATION |

One could reasonably conclude that the parties intended both Defendants to fall under the title "Owner and Managing Agent," based on the inclusion of the word "and."  Alternatively, one could reasonably conclude that Milwaukee Golf Shopping Center was the "Owner" and Milwaukee Golf Management was the "Managing Agent," based on the positioning of each name directly across from the respective titles.

The Court also finds that the CSA's signature page is ambiguous.  The CSA is signed by Milwaukee Golf Management Corporation, through an agent.  The Debtor argues that Management is therefore liable.  The Defendants claim that they represented at signing that Management was acting as the agent of Milwaukee Golf Shopping Center.

If the Debtor is correct that Management was not acting as an agent of the Shopping Center at signing, then Shopping Center itself may not be bound, as neither it nor its authorized agent signed the agreement.

Lastly, the Defendants argue that Management is not liable because Section XVI of the CSA states: "No individual or corporate general partner of Owner, nor any officer, director, employee or other agent of the same, shall have any personal liability in connection with this agreement."  Resolution of this issue depends on whether Management is found to be the Owner,

7

Managing Agent, or both under the terms of the CSA.

The Court therefore concludes that Management's liability on the debt is in bona fide dispute.

The Debtor argues, however, that this issue has no effect on the validity of the underlying debt.  According to the Debtor, if the Defendants are correct, Management should simply be dismissed from the action, leaving only the undisputed claim against Shopping Center, which is not disputed.

The Court disagrees.  Turnover under section 542 is not appropriate if there is a legitimate dispute about the ownership of the property the trustee seeks to recover.  See, e.g., Student Fin. Corp., 335 B.R. at 554; Hechinger, 282 B.R. at 162.  The Debtor asserts a right to recover property from Defendant Management.  The Court has determined that a bona fide dispute exists as to whether it would be entitled to do so; thus, a turnover action is inappropriate.

b.   Unmatured

The Defendants also contend that the debt allegedly owed by Shopping Center is unmatured because the Debtor requests "prevailing party" attorneys' fees under section XII of the CSA. The Defendants argue that any such fees are not a fixed amount currently due and owing.

The Court agrees.  Because the Debtor has not prevailed on the claim, any fee award is not only unliquidated, but also

8

contingent.  Thus, the Court finds that the Debtor's turnover claim is not an action to collect a matured debt and is therefore a non-core claim.

c.   Post-petition receivables

The Debtor also argues that, even if the Court determines that the debt is disputed, the turnover claim is still core because the majority of the services underlying the debt were provided post-petition.  The Debtor argues that actions to collect post-petition debts owed to a debtor-in-possession are generally considered core.  See, e.g., Eastern Electric Sales Co., Inc. v. General Electric Co., 94 B.R. 348, 349 (E.D. Pa. 1989) ("an action to recover on a debt which accrued after the bankruptcy petition was filed is core because it 'aris[es] in a case under title 11' . . .") (citing In re Arnold Print Works, Inc., 815 F.2d 165 (1st Cir. 1987)).

The Debtor acknowledges contrary authority in this district. DHP, 435 B.R. 264.  However, the Debtor seeks to distinguish the DHP holding by noting that the majority (75%) of the accounts receivable arose post-petition.

In DHP, the Court rejected the argument that an action to collect accounts receivable was rendered "core" merely because approximately 25% of the account accrued post-petition.  435 B.R. at 271-72.  However, the Court did not rely on this fact in its holding, having previously determined that the claim at issue was

9

really a breach of contract claim and, therefore, non-core.  Id.

The Defendants contend that the issue is controlled by the decision in Beard v. Braunstein, 914 F.2d 434, 445 (3d Cir. 1990), where the Third Circuit held that a claim involving a pre-petition contract that was breached both before and after the petition date was non-core.

The Court agrees with the Defendants.  In Beard, the Third Circuit distinguished Arnold because that case involved not only post-petition accounts, but also a post-petition contract.  Id. The Third Circuit reasoned that the contract in Arnold for the sale of estate assets was properly designated "core" because it was executed by the debtor as debtor-in-possession and was an "integral part of the bankruptcy."  Id.  The contract in Beard, in contrast, was a pre-petition lease, which the Third Circuit determined was only "tangentially related" to the bankruptcy case and thus "non-core."  Id.

In this case, the CSA is a pre-petition services contract. Thus, the Debtor's section 542 claim is more similar to the claim in Beard than the claim in Arnold.  As a result, the Court concludes that the claim is non-core.

2.  Breach of Contract and Unjust Enrichment

The second and third counts of the complaint assert breach of contract for failure to pay receivables when due and unjust enrichment.  The Court concludes that these are also non-core

10

claims.  See <u>Axiant</u>, 2012 WL 5614588, at *1 (holding that claims for breach of contract and unjust enrichment are non-core).

    B.   <u>Transfer of Venue</u>

Having determined that the Debtor's claims are non-core, the Court considers whether venue should be transferred.

Section 1412 of title 28 governs transfer of venue in a case or proceeding under title 11, while section 1404(a) is the general transfer of venue statute applicable to all federal civil cases.  The analysis under either section is essentially the same, namely, whether "justice" and the "convenience of the parties" warrants transfer.  <u>See, e.g.</u>, <u>In re Manville Forest Prods. Corp.</u>, 896 F.2d 1384, 1390-91 (2d Cir. 1990); <u>Thomson McKinnon Securities, Inc. v. White (In re Thomson McKinnon Securities, Inc.</u>), 126 B.R. 833, 834-35 (Bankr. S.D.N.Y. 1991).

In deciding a motion for transfer of venue, courts have considered numerous factors, including; (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of the books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that

11

would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.  DHP, 435 B.R. at 273.

The Court has discretion to determine the weight of each factor on a case-by-case basis.  Id. at 269.

### 1.   Plaintiff's choice of forum

The Debtor has chosen to file its action in this Court. Therefore, the Court finds that this factor weighs in favor of retaining the adversary in this forum.

### 2.   Defendants' choice of forum

The Defendants seek transfer to the Northern District of Illinois.  Therefore, the Court finds that this factor weighs in favor of transfer of venue, but notes that the Defendants' choice of venue is generally given less weight than the Plaintiff's. Hechinger, 296 B.R. at 326.

### 3.   Location where claim arose

The Defendants argue that this factor weighs in favor of transfer of venue, because the CSA is between Illinois businesses dealing with Illinois subject matter and an Illinois property.

The Debtor claims that the factor is neutral, because the location where the services were performed is not germane to the

dispute.  See DHP, 435 B.R. at 273 (citing Oglebay Norton Co. v. Port (In re Onco Inv. Co.), 320 B.R. 577, 580 (Bankr. D. Del. 2005)).

The Court agrees with the Debtor.  This is an action to recover unpaid receivables.  "[N]othing in the current dispute turns on where the contract was formed, performed or breached;" the issue will be resolved "through basic contract interpretation, not the location of the underlying events."  Onco Inv., 320 B.R. at 580.  Thus, the Court concludes that this factor is neutral.

### 4.    Location of books and records

The Court agrees with the Debtor that the location of books and records is not a significant factor in this case.  The Defendants do not claim that the case will be document-intensive and there are relatively few issues in dispute.  Id.  Therefore, the Court concludes that this factor is neutral.

### 5.    Convenience of the parties and witnesses

The Defendants claim that the fifth and sixth factors weigh in favor of transfer of venue.  The Defendants argue that all of their operations and employees are located in Illinois and speculate that most of the relevant Debtor's employees are located there as well.  The Defendants therefore contend that most, if not all, potential witnesses are in Illinois. Defendants further assert that because both parties have Illinois

counsel, each could conveniently handle litigation in Illinois.

The Debtor contends that this factor weighs in favor of retaining the adversary in Delaware.  The Debtor argues that transferring this adversary to Illinois, while its Delaware counsel pursues separate turnover actions in Delaware, would cause inefficiencies and inconvenience that would ultimately harm creditors of its estate.  The Debtor relies in part on its assertion that its turnover claim is core.

The Debtor's contentions are unconvincing.  The Debtor already has Illinois counsel, who is familiar with the Debtor and its business and capable of pursuing the claim.  Additionally, the turnover actions currently being pursued by Debtor's Delaware counsel are against unrelated defendants and no efficiencies can be expected from pursuing this action here.

The Debtor also argues that any inconvenience to potential witnesses is only relevant to the extent that the witnesses may actually be unavailable for trial in one of the fora and asserts that the Defendants have not indicated that any witnesses would actually be unavailable to testify in Delaware.

The Court agrees with the Defendants.  Non-party witnesses located in Illinois may be unwilling to testify and could not be subpoenaed by the Delaware Courts.  See Fed. R. Bankr. P. 9016 (incorporating Federal Rule of Civil Procedure 45(b)(2), which limits the court's subpoena power to a 100-mile radius from the

14

courthouse); <u>I.R.S. v. CM Holdings, Inc.</u>, CIV. A. No. 97-695
MMS, 1999 WL 459754 *168-69 (D. Del. June 10, 1999). The
inability of either party to subpoena such witnesses would be an
inconvenience. In addition, even if the witnesses are willing to
testify, it would be inconvenient for them to travel to Delaware
to do so.

For these reasons, the Court finds that these two factors
favor transfer.

6. <u>Enforceability of any judgment</u>

The Court has no reason to believe that a judgment in either
jurisdiction would not be given full faith and credit. <u>See,</u>
<u>e.g.</u>, <u>OCB Rest. Co. v. Vlahakis (In re Buffets Holdings, Inc.)</u>,
397 B.R. 725, 729 (Bankr. D. Del 2008). Therefore, the Court
concludes that this factor is neutral.

7. <u>Practical considerations</u>

As to the eighth factor, the test is "whether it is actually
easier, faster or less expensive to litigate <u>this</u> adversary in
another forum." <u>DHP</u>, 435 B.R. at 274 (citations omitted)
(emphasis in original). This factor usually favors retention of
an adversary in the forum where it was commenced. <u>Id.</u>

However, where an adversary proceeding is in its infancy,
such that the Court is not familiar with the facts underlying the
dispute, the Court is not able to adjudicate the matter more
expeditiously than any other court. <u>Id.</u> The parties concede

15

that very little has progressed in this adversary.

Moreover, when a party demands a jury trial, it essentially removes the adversary proceeding from the jurisdiction of the bankruptcy court.  Id. at 274-75.  The Defendants assert that they will demand a jury trial once required to file a responsive pleading.  The adversary must therefore be determined in a District Court, and the District Courts of Delaware and Illinois are equally unfamiliar with this case.

For these reasons, the Court finds that practical considerations do not favor retaining this adversary in this forum.

### 8.   Relative administrative difficulty

This factor considers the relative administrative difficulty of the fora resulting from congestion of the courts' dockets. Id. at 275.  The parties concede that this factor is neutral, and the Court agrees.

### 9.   Public policies of the fora

Public policy favors centralization of bankruptcy matters. Id.  However, "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."  Id. (citations omitted).

However, the policy of centralization of administration of the estate is not greatly frustrated by the transfer of non-core proceedings.  See, e.g., AstroPower Liquidating Trust v. Xantrex

Tech., Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309,
329 (Bankr. D. Del. 2005).  As noted above, this is a non-core
proceeding.  The Court therefore concludes that while this factor
favors retention in this forum, it does not carry great weight.

       10.  <u>Familiarity with applicable state law</u>

    The Court agrees with the Debtor that the issues presented
in this adversary proceeding are neither novel nor complex.
However, Illinois law governs the CSA, and Illinois judges are
more familiar with Illinois law.  This factor favors transfer.

       11.  <u>Local interest</u>

    The Court agrees with Defendants that Illinois has a greater
interest in deciding issues governed by Illinois law.  As such,
this factor weighs in favor of transfer.

    After weighing the above factors, the Court finds that most
either favor transfer or are neutral.  Therefore, the Court
concludes that transfer is warranted and, in the exercise of its
discretion, the Court will grant the Defendants' motion to
transfer venue.  Because the Court has determined that a transfer
of venue is appropriate, it will not reach the issue of partial
dismissal.

IV.  <u>CONCLUSION</u>

    For the reasons set forth above, the Court will grant the
Defendants' motion to transfer venue of this adversary proceeding

to the United States District Court for the District of Illinois.

An appropriate Order is attached.

Dated: November 3, 2014          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge